F I L E D
 Clerk
 District Court
AUG 22 2025
for the Northern Mariana Islands
By_____
     (Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| CHRISTOPHER LILLES,<br><br>            Plaintiff,<br><br>  v.<br><br>J.C. TENORIO ENTERPRISES, INC.,<br><br>            Defendant. | Case No. 1:22-cv-00017<br>Case No. 1:24-cv-00016<br><br>MEMORANDUM DECISION:<br><br>GRANTING DEFENDANT J.C. TENORIO ENTERPRISES, INC.'S MOTION TO ENFORCE THE SETTLEMENT AGREEMENT AND FOR SANCTIONS,<br><br>AND DENYING PLAINTIFF CHRISTOPHER LILLES'S COUNTER MOTION FOR SANCTIONS |

The Court held a hearing on J.C. Tenorio Enterprises, Inc.'s ("JCT") Motion to Enforce the Settlement Agreement and for Sanctions against Plaintiff Christopher Lilles. ("Mot.," ECF No. 41 *in* 22-cv-17 (hereinafter "*Lilles I*"); ECF No. 17 *in* 24-cv-16 (hereinafter "*Lilles II*").)[1] JCT supported its Motion with a Memorandum of Law (ECF No. 17-1), a Declaration by Attorney Charity Hodson (ECF No. 17-2) and exhibits that included an email and Lilles's notice of unwillingness to accept the settlement ("Email & Notice," ECF No. 17-3).

In *Lilles I*, where he is represented by Attorney James S. Sirok, Plaintiff filed a Memorandum in response that "simply oppose[d] the motion per the opposition of Plaintiff Lilles in CV 24-00016, and by this reference adopt[ed] the position and arguments submitted by Plaintiff Lilles under CV 24-00016." (Mem. in Response 3, ECF No. 42 *in Lilles I*.) In *Lilles II*,

---

[1] For convenience of the Court and parties all ECFs that are referenced hereafter refer to *Lilles II* unless explicitly stated otherwise.

1

where Lilles represents himself *pro se*, he filed a Memorandum in Opposition and Counter-Motion ("*Lilles II* Opp'n & Counter-Mot.," ECF No. 18), supported by exhibits (ECF Nos. 18-1–18-3). He also supported his Opposition and Counter-Motion with a Declaration (ECF No. 19) and attached a copy of the Court's Order regarding Submission of Settlement Statements (ECF No. 19-1).

The Court, having considered JCT's Motion for an Order to Show Cause, or alternatively to Enforce the Settlement Agreement and for Sanctions, denied the portion of JCT's Motion for an Order to Show Cause why Lilles's cases should not be dismissed with prejudice. (Decision & Order, ECF No. 20.) Thereafter, JCT filed its Omnibus Reply in support of the remaining portion of its Motion to Enforce the Settlement and for Sanctions. (Omnibus Reply, ECF No. 21.) JCT supported its Omnibus Reply with a Affidavit from JCT Representative Roman T. Palacios. (Palacios Aff., ECF No. 21-1.)

At the hearing on JCT's Motion, having considered the filings, relevant authorities, and the parties' oral arguments, the Court GRANTED JCT's Motion and sanctioned Lilles $2,000.00. The Court also DENIED Lilles's Counter-Motion. (Mins., ECF No. 22.) The Court issues this Memorandum Decision outlining its reasoning.

I.     BACKGROUND

On May 6, 2025, Magistrate Judge Heather L. Kennedy called the Court into session for a hearing after settlement negotiations concluded in both *Lilles I* and *II*. (Sealed Tr. 1-2, ECF No. 13.) At Magistrate Judge Kennedy's request, JCT's legal counsel Attorney Hodson read the seven material terms of the "global settlement" between the two cases. (*Id.* at 3.) The details are contained in the sealed transcript of the session that was made available to the parties. (*Id.*)

      Magistrate Judge Kennedy informed the parties that "any refusal to sign any settlement paperwork does not rescind the settlement agreement that's been agreed to today." (*Id*. at 2.) Lilles's legal counsel Attorney Sirok in *Lilles I* confirmed that Hodson "covered everything" and did not have anything to add. (*Id*. at 4.) When Magistrate Judge Kennedy asked Lilles himself as the pro se Plaintiff in *Lilles II* if he had any terms to add to those Attorney Hodson listed, having been put under oath, he swore he did not. (*Id.* at 5.) He also swore that he understood the essential terms of the settlement agreement that were stated on the record. (*Id.*) Finally, he swore that he understood that any refusal to sign settlement paperwork later would not mean that he has not settled his cases. (*Id.*)

      On the record, Magistrate Judge Kennedy informed the parties that the Court would vacate future dates in anticipation that the parties would circulate a full settlement agreement and get a stipulation to dismiss both *Lilles I* and *II*. (*Id.* at 6.) Attorney Sirok agreed to draft the settlement agreement, which Magistrate Judge Kennedy informed the parties that per their request, in the stipulation to dismiss, the Court shall retain jurisdiction to enforce the settlement agreement. (*Id.* at 7.)

      About eight days after, on May 14, 2025, Lilles emailed both the Court and Attorney Hodson with a notification letter in which he stated that he no longer agrees to settlement in both *Lilles I* and *II*. (Email & Notice 1-2.) He "respectfully notif[ied] the Court of his unwillingness to accept and sign the settlement agreement proposed or discussed as a result of the aforementioned conference." (*Id.* at 2.) Lilles stated he "carefully considered the proposed terms and, at this time, does not believe they adequately resolve the disputed matters from his perspective." (*Id.*) On May 15, 2025, Attorney Robert T. Torres for JCT replied to an email sent by Attorney James Sirok to Magistrate Judge Kennedy stating that Lilles should show cause why his pro se case should not

3

be dismissed with prejudice and that he should pay attorney's fees and costs for his bad faith actions. (Hodson Decl. ¶ 4.) Attorney Torres copied Lilles and Attorney Hodson on this email. (*Id.*) Subsequently on May 30, 2025, Attorney Torres emailed Lilles and Attorney Sirok—copying Attorney Hodson—that warned that it was JCT's position that Lilles's refusal to proceed with signing the settlement agreement did not render the settlement void and that if resolution failed at the hearing on June 11, 2025, JCT would move for dismissal of *Lilles I* and *II* and seek attorney's fees and costs. (*Id.* ¶ 6.) The June 11 hearing was reset at the request of Lilles, with no objection from JCT. At the next hearing on July 7, 2025, JCT informed Lilles that JCT would seek attorney's fees and costs if having to file a dismissal motion. (*Id.* ¶ 7.) The total attorney's fees and costs JCT have incurred in time expended on status conferences scheduled because of Lilles's refusal to sign dispositional documents and JCT finally filing its motions totals $1,704.75. (*Id.* ¶ 8.) JCT's total fees does not include finalizing the Motions, any estimates for fees and costs for a reply brief or arguing the Motions. (*Id.*)

At the hearing on JCT's Motion, the Court confirmed with the parties that Attorney Sirok for Plaintiff in *Lilles I* drafted the settlement agreement with input from Lilles himself. Attorneys Torres and Hodson and JCT's Representative Palacios signed the agreement and emailed back a copy to Attorney Sirok with a scanned copy of a check for the first payment pursuant to the terms of the settlement agreement. As of the hearing date, Lilles had not signed the returned settlement agreement.

## II.    LEGAL STANDARD

### A.    Enforcement of Settlement Agreement

"[T]he construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretations of contracts generally." *O'Neil v. Bunge Corp.*, 365

4

F.3d 820, 822 (9th Cir. 2004) (quoting *United Com. Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992)). In the Commonwealth of the Northern Marianas Islands, "the trial court possesses an 'inherent power to summarily enforce settlement agreements entered into by parties litigant in a pending case." *Torres v. Fitial*, 2008 MP 15 ¶ 9 (quoting *Cia Anon Venezolana De Navegacion v. Harris*, 374 F.2d 33, 36 (5th Cir. 1967)). "[F]or a settlement to be enforced, it must actually have been agreed to by both parties." *Id*.

The Ninth Circuit has found that "the district court may enforce only *complete* settlement agreements…. Where material facts concerning the existence or terms of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing." *Doi v. Halekulani Corp.*, 276 F.3d 1131, 1138 (9th Cir. 2002) (quoting *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987)). Where the parties voluntarily appeared in open court, announced that there was a settlement, and placed the material terms of the settlement agreement "on the record," there is "no need for an evidentiary hearing on whether an agreement existed, or what its terms were: the parties dispelled any such questions in open court." *Id.* at 1138-39 (citing *Vari-O-Matic Machine Corp. v. N.Y. Sewing Mach. Attachment Corp.*, 629 F. Supp. 257, 259 (S.D.N.Y. 1986)).

**B.     Sanctions**

With regards to sanctions, Federal Rule of Civil Procedure 11(b) first states:

> By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. Proc. 11(b)(1)-(4).

"[A]fter notice and a reasonable opportunity to respond, the court determines that Rule 11(b) had been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." *Id.* at (c)(1) "A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." *Id.* at (c)(2).

In addition, "[s]anctions are imposed pursuant to inherent authority only upon a finding of bad faith or conduct tantamount to bad faith. *Harper v. Nev. Property, LLC*, 552 F. Supp. 3d 1033, 1046 (D. Nev. 2021) (citing *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1108 (9th Cir. 2002)).

> The Ninth Circuit has affirmed the imposition of sanctions under inherent authority when the terms of a settlement agreement had been placed on the record, there had been no showing that the written settlement agreement was inconsistent with those terms as stated on the record, and the party attempting to withdraw had refused to sign the written agreement.

*Id.* (citing *Doi*, 276 F.3d at 1141).

### III.   DISCUSSION

In JCT's Motions before the Court for both cases, JCT argued that the Court should enforce the settlement "by compelling Lilles to execute the necessary documents, along with sanctions requiring Lilles to pay JCT's attorney's fees and costs." (JCT Mem. in Supp. 6.) JCT argued that there are no material facts in dispute and that Lilles's reasoning is not a legal basis to rescind their agreement. (*Id.* at 11.) JCT also sought $1,704.75 in fees and costs as a sanction for

Lilles's refusal to sign dispositional documents. (*Id.* at 12.) Lilles opposed the Motions and argued that the agreement is unenforceable as a matter of law because a binding settlement agreement was not formed because JCT violated a direct Court order that instructed all parties to appear at the settlement conference with full settlement authority. (Opp'n 5.) JCT replied and argued that there was no fraudulent misrepresentation, and that Lilles's Counter-Motion for sanctions should not be considered pursuant to Federal Rule of Civil Procedure 11(c)(2). (Omnibus Reply 6.) The Court agreed with JCT for the following reasons.

### A. The Court Granted JCT's Motions to Enforce the Settlement Agreement

JCT supported its Motions to Enforce the Settlement Agreement by primarily relying on *Doi v. Halekulani Corp.*, 276 F.3d 1131 (9th Cir. 2002). (JCT Mem. in Supp. 10-11.) As aduced at the hearing, Lilles does not argue that any of the material terms of the settlement agreement stated on the record are different from those in the written settlement agreement presented to him for his signature. As such, the Court finds that *Doi* is binding and on-point, and enforces the settlement agreement between JCT and Lilles.

In *Doi*, the Ninth Circuit reviewed a District of Hawaii case to determine if the district court correctly ruled to enforce a negotiated settlement without holding an evidentiary hearing. *Id.* at 1134. All parties announced in open court the terms of their settlement on the record. *Id.* They agreed that the payment and the stipulation to dismiss the action would be delivered to the Judge's chambers at a specified time. *Id.* at 1135. The defendant filed a motion to compel settlement, which the district court held a hearing on and ultimately granted. *Id.* at 1135-36. The plaintiff alleged before the Ninth Circuit that the district court erred in enforcing the agreement because it was not a binding settlement agreement. *Id.* at 1136-37. The Ninth Circuit determined that although a district court may only enforce a complete settlement agreement—in other words

where material facts concerning the existence or terms of an agreement are not in dispute—"there was no need for an evidentiary hearing on whether an agreement existed, or what its terms were: the parties dispelled any such questions in open court." *Id.* at 1138-39.

JCT also relies on *Harper v. Nevada Property, LLC*, 552 F. Supp. 3d 1033 (D. Nev. 2021), which is a District Court of Nevada order adopting a report and recommendation by a magistrate judge. (Mem. in Supp. 10.) In *Harper*, defendant filed a motion to enforce the settlement and for sanctions. 552 F. Supp. 3d at 1037. The parties reached a settlement, which was placed on the record with material terms. *Id.* at 1038. The court ordered the parties to file dismissal papers by a specific date. *Id.* Subsequently, the court extended the time to file the dismissal. *Id.* Thereafter, plaintiff no longer wished to settle and refused to sign the agreement, and defendant filed a motion to enforce and for sanctions. *Id.* at 1038-39. The court in *Harper* relied on *Doi* and found that counsel drafted the corresponding written terms of the settlement agreement based on the same standard language used in several of the parties' other cases and that there was no evidence of overreaching. *Id.* at 1044-45. Additionally, plaintiff did not show that the terms of the written agreement prepared by defense counsel were inconsistent with the terms of the agreement made on the record. *Id.* at 1045.

Here, just like in *Doi*, the parties appeared in open court and placed the material terms of the settlement agreement on the record. *See* 276 F.3d at 1138. Moreover, just as in *Doi*, there is no need for an evidentiary hearing on whether a valid agreement exists because the parties dispelled of any such question on the record before Magistrate Judge Kennedy. *See id.* at 1139. Lilles did not contend that the terms of the written agreement prepared by his counsel in *Lilles I* with his input as a pro se litigant were inconsistent with the terms of the agreement made on the record. Therefore, the Court granted JCT's Motions to Enforce the Settlement Agreement.

8

Lilles contended that because JCT's representative was not a decision-maker with full authority, the parties could not and did not reach a final and binding settlement agreement. (*Lilles II* Opp'n & Counter-Mot. 6.) Lilles argued that the requirement of "full authority" is a "material term" and not just a mere suggestion. (*Id.* at 7.) First, Lilles is incorrect. Nowhere on the record when the material terms were expressly stated, and confirmed by Lilles, were there any term or questions regarding the authority of JCT's representative. Second, Lilles asserted that any purported "acceptance" by JCT was conditional upon the approval of absent Board of Directors. (*Id.* at 8.) Representative Palacios admits to calling a Director during the settlement conference, but not for the purpose of obtaining approval. (Palacios Aff. 2.) Even if Representative Palacios did call another individual with JCT for approval, JCT and Lilles would have still entered into a binding settlement agreement when they stated the material terms on the record and agreed to those terms. *Salyers v. Metro. Life Ins. Co.*, 871 F.3d 934, 940 (9th Cir. 2017) ("Apparent authority results when the principal does something or permits the agent to do something which reasonably leads another to believe that the agent had the authority he purported to have.")

**B. The Court Granted JCT's Motion for Sanctions But Denied Lilles's Motion for Sanctions**

Both parties filed motions for sanctions. JCT included its motion for sanctions in its Motion for an Order to Show Cause and Lilles included his as a Counter-Motion for sanctions in his opposition.

JCT correctly recognized that a motion for sanctions must be made separately from another motion or filing pursuant to Federal Rule of Civil Procedure 11(c)(2). (Omnibus Reply 6.) For this reason, the Court denies Lilles's Counter-Motion for Sanctions pursuant to Rule 11(c)(2). *See Love v. Kardooni*, No. 21-16685, 2022 WL 4376392, at \*2 (9th Cir. Sept. 22, 2022)

(declining to address the arguments for Rule 11 sanctions because defendants did not file a motion for sanctions citing the "separately from any other motion" requirement of Rule 11).

As to Lilles's Counter-Motion for sanctions, he also relied on remarks from Magistrate Judge Kennedy during the settlement conference that the long delays were because Representative Palacios did not have the authority to make a decision related to the current offer/counteroffer Lilles proposed. (Lilles's Decl. ¶ 9.) Regardless of these comments, Lilles proceeded to participate in the settlement conference and ultimately entered into a settlement agreement on the record in open court. Federal Rule of Evidence 408(a)(2) prohibits the use of conduct or statements made during compromise negotiations. Here, Lilles relied on statements made by the Magistrate Judge during the negotiations phase to rescind the settlement agreement that was placed on the record in open court after the settlement negotiations concluded and the parties reached an agreement. Because Lilles's evidence is inadmissible, his Counter-Motion also fails on this ground.

As to JCT's Motion for Sanctions, the Court found that pursuant to its inherent authority, Lilles acted in bad faith or conduct tantamount to bad faith and sanctioned Lilles $2,000.00 to be withheld from his settlement payment by JCT. Magistrate Judge Kennedy informed the parties on the record that "any refusal to sign any settlement paperwork does not rescind the settlement agreement that's been agreed to today." (Sealed Tr. 2.) When Lilles was asked if he had any term to add, having been put under oath, he swore he did not. (*Id.* at 5.) He also swore that he understood the essential terms of the settlement agreement that were stated on the record. (*Id.*) Finally, he swore that he understood that any refusal to sign settlement paperwork later would not mean that he has not settled his cases. (*Id.*) Thereafter, Lilles emailed both the Court and Attorney Hodson with a notification letter in which he stated that he no longer agrees to settlement in both

*Lilles I* and *II* even thought he had already entered into the settlement agreement. (Email & Notice 1-2.) Subsequently, a series of emails and status conferences ensued between the parties in which Lilles was warned that it was JCT's position that Lilles's refusal to proceed with signing the settlement agreement did not render the settlement void and that if resolution failed at the hearing on June 11, 2025, JCT would move for dismissal of *Lilles I* and *II* and seek attorney's fees and costs. (Hodson Decl. ¶¶ 4-6.) Disregarding the settlement agreement and warnings to Lilles, he proceeded to attempt to renege on the settlement agreement he had already entered into when he opposed JCT's Motions to Enforce the Settlement Agreement.

The total attorney's fees and costs JCT has incurred in time expended on status conferences scheduled because of Lilles's refusal to sign dispositional documents and JCT finally filing its motions totals $1,704.75. (*Id.* ¶ 8.) JCT's total calculated fees does not include finalizing the Motions, any estimates for fees and costs for a reply brief or arguing the motions. (*Id.*) For these reasons, the Court concluded Lilles acted in bad faith or conduct tantamount to bad faith and sanctioned Lilles $2,000.00.

### IV.   CONCLUSION

For the reasons stated herein, the Court granted JCT's Motions to Enforce the global settlement agreement in *Lilles I* and *II*. The Court denied Lilles Counter-Motion for Sanctions and granted JCT's Motion for Sanctions in the amount of $2,000.00 to be witheld from Lilles's settlement payment. Once the payment terms of the settlement agreement have been fulfilled by JCT, the parties shall file their motions to dismiss these actions with prejudice.

IT IS SO ORDERED this 22nd day of August 2025.

RAMONA V. MANGLONA
Chief Judge

11